## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| TRINA TATE, BRITTANY HUTCHINSON, and MORGAN HUTCHINSON, | ) ) ) ) | |
| *Plaintiffs* | ) ) ) | |
| v. | ) ) | Civil Action No. 3:22-cv-45 |
| | ) | **JURY TRIAL DEMANDED** |
| EVENTMAKERS-USA, INC., a Virginia corporation, d/b/a CVAH PRODUCTIONS and/or d/b/a IAH PRODUCTIONS, LAWRENCE A. CREEGER and MATTHEW ALLAN CREEGER, | ) ) ) ) ) ) ) ) | |
| *Defendants* | ) | |

## COMPLAINT

COME NOW Plaintiffs Trina Tate, Brittany Hutchinson and Morgan Hutchinson (collectively, "Plaintiffs"), by counsel and pursuant to Federal Rule of Civil Procedure 8(a), and state the following as their Complaint against Defendants EventMakers-USA, Inc. d/b/a CVAH Productions and/or IAH Productions ("EMUSA"), Lawrence A. Creeger ("L. Creeger") and Matthew Allan Creeger ("M. Creeger") (collectively, "Defendants"):

## NATURE OF THE CASE

1. This is an action for unpaid overtime premiums in violation of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. (hereinafter "FLSA"); Defendants' theft of wages from Plaintiffs B. Hutchinson and M. Hutchinson in violation of Virginia Code § 40.1-29 (the "Wage Theft Act"); Defendants' unlawful retaliation against Plaintiffs B. Hutchinson and M. Hutchinson for engaging in protected activity in violation of Virginia Code § 40.1-27.3, and Defendants'

misclassification of all Plaintiffs as independent contractors in violation of Virginia Code § 40.1-28.7:7.

2. As detailed more fully herein, Plaintiffs worked for Defendants, who served as their joint employers, for a number of years beginning in 2013 and extending through June 2021. Although Defendants misclassified Plaintiffs as contractors, Defendants exercised control over the time, place and manner of Plaintiffs' work such that Plaintiffs qualified as non-exempt employees of the Defendants under the FLSA and under Virginia law.

3. Although Plaintiffs' positions were non-exempt, Defendants regularly suffered or permitted them to work overtime hours without paying them the required overtime wage premium, in violation of the FLSA.

4. Further, Defendants L. Creeger and M. Creeger instructed Plaintiff B. Hutchinson to engage in unlawful acts related to accounting, bookkeeping, and Defendants' applications for federal monies that, had she complied with the illegal instruction, would have subjected her to criminal liability, or violated state or federal laws or regulations. Plaintiff B. Hutchinson told L. Creeger that she would not comply with his instructions because his instructions were for an unlawful purpose, would have resulted in violations of state or federal laws or regulations, and would have subjected her, M. Hutchinson, and other employees to liability for such violations. When B. Hutchinson refused to comply with his instructions, L. Creeger retaliated against her by stripping her and M. Hutchinson of job responsibilities, subjecting them to hostility and degradation, refusing to pay them earned wages, and ultimately publishing false, fabricated and defamatory information about the reason for their separation from employment. In so doing, Defendants engaged in unlawful retaliation and wage theft in violation of Virginia Code §§ 40.1-27.3 and -29.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of Count I of this Complaint pursuant to 28 U.S.C. § 1331, because it is an action arising under the laws of United States, specifically, the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*; and jurisdiction over the subject matter of Counts II, III and IV under 28 U.S.C. § 1367(a), which provides for supplemental jurisdiction over state law claims. The jurisdiction of this Court is invoked to secure protection against and redress the deprivation of rights guaranteed by state and federal laws, which rights provide for compensatory relief and other relief for illegal wage and employment practices.

6. This Court has personal jurisdiction over each of the Defendants because each has substantial contacts with and conducts business within the Commonwealth of Virginia, in this district and division.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the unlawful employment practices alleged herein were committed in the Eastern District of Virginia, and Defendants operate and conduct business in and around the Eastern District of Virginia, including but not limited to the City of Richmond and Chesterfield, Henrico County and Hanover Counties, Virginia.

## PARTIES

8. Plaintiff Trina Tate worked for Defendants from approximately 2016 until June of 2021, during which time she served as Volunteer Coordinator, Back of House Assistant and Runner at various venues, including Celebrate Virginia After Hours (previously known as Celebrate Virginia Live) in Fredericksburg, Virginia; Innsbrook After Hours in Glen Allen, Virginia; and After Hours Concerts at Meadow Event Park in Doswell, Virginia. Plaintiff Tate is a citizen of the United States and currently resides in Woodford, Virginia.

9. Plaintiff Brittany Hutchinson worked for Defendants as a bookkeeper and "Series Coordinator" from 2013 until June 2021. She is a citizen of the United States and currently resides in this district and division.

10. Plaintiff Morgan Hutchinson worked for Defendants as a "Venue Coordinator" from 2013 until June 2021. She is a citizen of the United States and currently resides in this district and division.

11. Defendant EventMakers-USA, Inc. ("EMUSA") is a Virginia stock corporation that is owned and operated by Defendant Lawrence Creeger and others. EMUSA is an event management company whose principal place of business is at 4443 Cox Road, Glen Allen, Virginia, 23060. EMUSA also does business using the fictitious names CVAH Productions ("CVAH") and IAH Productions ("IAH").

12. Defendant Lawrence A. Creeger ("L. Creeger") is the majority owner and President of EMUSA. L. Creeger manages and oversees the overall operations of EMUSA, including but not limited to its events, contracts, vendors, suppliers and employees.

13. Defendant Matthew Allan Creeger ("M. Creeger") is L. Creeger's son. M. Creeger serves as Vice President and is an employee of Defendant EMUSA. M. Creeger assists L. Creeger with EMUSA's day to day management and operations.

14. At all relevant times, Defendants were Plaintiffs' joint "employers" under 29 U.S.C. § 203(d), and Plaintiffs were Defendants' "employees" within the meaning of the 29 U.S.C. § 203(e).

**FACTS**
*Plaintiffs' Employment by Defendants*

15. Plaintiffs hereby incorporate as though fully alleged herein the allegations set forth in the foregoing paragraphs.

16. EMUSA, doing business as IAH Productions and CVAH Productions, operates Innsbrook After Hours, Celebrate Virginia After Hours, and the After Hours Concert Series, which are seasonal concert series in Glen Allen, Fredericksburg, and Doswell, Virginia, respectively.

17. Plaintiff B. Hutchinson was hired in 2013 as a day worker. Beginning in 2015, EMUSA trained B. Hutchinson as a bookkeeper, and she was later given the title of "Series Coordinator."

18. As the "Series Coordinator," B. Hutchinson was responsible for keeping track of ticket sales and reconciling accounts related to ticket sales, general bookkeeping, and payroll. She had no supervisory authority over any employees of EMUSA.  In 2018, L. Creeger defined B. Hutchinson's responsibilities to include "hospitality coordination," office management, public relations and advertising, coordination with vendors, security, and volunteers, and planning and executing volunteer meetings. In addition, L. Creeger directed B. Hutchinson to continue to provide general bookkeeping, including accounts payable and receivable, bank account reconciliation, payroll, and coordinating with an accountant for tax return preparation, profit and loss statements, and balance sheet statements. L. Creeger also defined B. Hutchinson's duties to include coordination of event sponsorships. In each of these responsibilities, L. Creeger emphasized that he would direct B. Hutchinson in when and how to fulfill her responsibilities and that she had no discretion as to how she was to complete tasks.

19. In 2019, B. Hutchinson ceased doing bookkeeping work for EMUSA

20. On September 14, 2020, L. Creeger named B. Hutchinson as Secretary and Treasurer of EMUSA, and as a Director of EMUSA. Both of these appointments were made without B. Hutchinson's knowledge or consent.

21. Plaintiff M. Hutchinson started working for Defendants in 2013 as a day worker and was in charge of "chits" (the venue's currency). On the days of events, she would arrive at the jobsite at 7:30 a.m. and leave between midnight and 2 a.m. the following morning. On the days following events, M. Hutchinson would return to the jobsite to count all the chits. In 2015, Defendant L. Creeger trained M. Hutchinson on site setup and gave her the title of "Venue Coordinator." In 2018, L. Creeger further defined M. Hutchinson's job duties to include setting up and breaking down event sites; setting up and removing tents, chairs, portable toilets and other equipment; cleaning venues; handling and reconciling chit sales; purchasing alcohol for shows; and purchasing or leasing other supplies for the venue, all of which was done according to L. Creeger's instructions.

22. Plaintiff Tate worked for Defendants from 2016 to 2019 as the Volunteer Coordinator, Back of House Assistant and Runner at Celebrate Virginia After Hours (previously known as Celebrate Virginia Live) in Fredericksburg, Virginia. From 2017 through 2019, she also worked as Back of House Assistant and Runner at Defendants' venue located at Innsbrook After Hours in Glen Allen, Virginia, and she performed the same roles at Defendants' successor venue, After Hours Concerts at Meadow Event Park in Doswell, Virginia, in May and June of 2021. On the days of events, Tate would begin her work day around 7:30 a.m. and finish between 11:00 pm and 1:00 a.m. the following morning. On the days following events, Tate would return to the jobsite to clean and restock supplies. In her role as Volunteer Coordinator, Plaintiff Tate was responsible for recruiting, training, feeding and managing volunteers to serve at the Celebrate

6

Virginia venue in Fredericksburg. As Back of House Assistant, Plaintiff Tate was responsible for helping set up the venue before events, cleaning the venue before and after events (which included duties that ranged from washing linens to plunging toilets); stocking each venue's "green room" and hospitality rooms; and generally assisting wherever needed before, during and after events. In her role as Runner, Tate was responsible for purchasing food, beverages and supplies to stock each venue and transporting the talent, tour manager, and bus driver before and after events.

### *Plaintiffs Were Employees Rather than Independent Contractors*

23. Plaintiffs hereby incorporate as though fully alleged herein the allegations set forth in the foregoing paragraphs.

24. Plaintiffs M. Hutchinson and B. Hutchinson (together, the "Hutchinson Plaintiffs") were given their work assignments by Defendants L. Creeger and M. Creeger, who also gave instructions to the Hutchinson Plaintiffs on the means and methods to be used in completing their assignments. If problems arose during the performance of their assignments, the Hutchinson Plaintiffs were to contact L. Creeger for instructions on resolving the problems.

25. Plaintiff Tate was given her work assignments by L. Creeger, M. Creeger, B. Hutchinson and M. Hutchinson. If problems arose during the performance of her assignments, Plaintiff Tate was to contact whoever was responsible for that aspect of the event.

26. Plaintiffs spent the greater part of their time working either at the EMUSA venues or at the businesses of vendors, suppliers, and sponsors.

27. The Hutchinson Plaintiffs were required to attend meetings at least weekly, sometimes more frequently, at L. Creeger's home "office" (actually, a walk-in closet in his bedroom).

28. Plaintiffs were required to perform their services personally and were not permitted to hire substitute workers or helpers. Any workers hired to assist in Plaintiffs' assignments were paid directly by EMUSA. All office space, office supplies, software, equipment, materials, and property used by Plaintiffs in completing their assignments was provided by EMUSA. EMUSA reimbursed Plaintiffs for expenses they incurred in the performance of their assignments.

29. At all relevant times, Defendants represented to Plaintiffs that they were "independent contractors" and treated them as such by, for example, refusing to withhold income taxes, Social Security taxes or Medicare taxes from their wages and refusing to provide them with workers' compensation insurance coverage.

30. Defendants represented to their customers and the world that Plaintiffs were their employees. EMUSA provided them with company business cards and email accounts using the "innsbrookafterhours.com" and "afterhoursconcertseries.com" domain names. In September, 2020, EMUSA amended its annual report filed with the Virginia State Corporation Commission to name B. Hutchinson as Secretary and Treasurer of the corporation.

31. The Hutchinson Plaintiffs also sold event tickets and event sponsorships using a spreadsheet of potential sponsors maintained by EMUSA in a database. All ticket orders and sponsorships placed by them were subject to EMUSA's approval.

32. Regardless, Defendants misclassified Plaintiffs as independent contractors.

33. Although Plaintiff B. Hutchinson suggested to M. and L. Creeger, on multiple occasions, that Plaintiffs should complete W-4 forms in order to be taxed and paid as employees rather than independent contractors, M. and L. Creeger ignored her. Defendants M. and L. Creeger both stated repeatedly that they would never classify and pay Plaintiffs as employees.

34. As a result of L. Creeger's refusal to properly classify the Hutchinson Plaintiffs as employees, in 2017 M. and B. Hutchinson organized The BritMor Group, LLC, a Virginia limited liability company ("BritMor"), for the purpose of receiving wage payments made by EMUSA to B. Hutchinson and M. Hutchinson. BritMor has had no fixed assets, no employees other than B. Hutchinson and M. Hutchinson, and has remained uncapitalized since its organization. From 2017 until 2021, EMUSA paid the Hutchinson Plaintiffs their wages through BritMor, except that, during the period beginning in October 2020 and continuing into May 2021, EMUSA ceased paying wages in full and instead made sporadic and reduced payments. During that period of time, the Hutchinson Plaintiffs continued to work for EMUSA, and L. Creeger instructed them to charge their living expenses on EMUSA credit cards, with the promise that EMUSA would pay them the difference when normal business resumed.

35. L. Creeger, acting on behalf of Defendants, knowingly and intentionally misclassified Plaintiffs as independent contractors in order to avoid Defendants' obligations to pay Social Security and other taxes and to provide Plaintiffs with employee benefits, including workers' compensation coverage.

*Defendants Sought Government Subsidies and Grants Using False Information*

36. Plaintiffs hereby incorporate as though fully alleged herein the allegations set forth in the foregoing paragraphs.

37. In April 2020, L. Creeger, M. Creeger, and EMUSA sought a $2 million loan guaranteed by the United States government under the Small Business Administration's Economic Injury Disaster Loan ("EIDL") Program. An obstacle to the Defendants' application for EIDL funds was EMUSA's failure to have filed any state or federal tax returns after 2010. Defendant L. Creeger instructed B. Hutchinson to create tax returns for the years 2011-2019 using whatever

9

bookkeeping information she had and without waiting for a certified public accountant's approval. Even though tax return preparation had never been a part of B. Hutchinson's job duties, because L. Creeger told her she would be out of work if she refused, she prepared the returns. In early May, L. Creeger instructed B. Hutchinson that he wanted her to file the returns regardless of whether they were accurate. When B. Hutchinson completed the returns, she told L. Creeger that they were inaccurate in several areas and should not be filed. B. Hutchinson told L. Creeger that she would not sign the returns on behalf of EMUSA. EMUSA's EIDL application was thereafter declined by the SBA.

38. On or about September 14, 2020, L. Creeger filed an annual report with the Virginia State Corporation Commission removing M. Creeger as Secretary and Treasurer of EMUSA and naming B. Hutchinson as EMUSA's Secretary and Treasurer. This change was made without B. Hutchinson's knowledge or consent.

39. In February 2021, EMUSA began the process of applying for a Shuttered Venue Operator's Grant ("SVOG"), a program administered by the U.S. Small Business Administration. The SVOG program was established in the Economic Aid to Hard-Hit Small Businesses, Nonprofits and Venues Act and amended by the American Rescue Plan Act to provide over $16.2 billion in economic relief to target industries. *See* 15 U.S.C. § 9009a.

40. In February 2021, L. Creeger instructed B. Hutchinson to amend EMUSA's 2019 tax return to make it conform to profit and loss statements created from EMUSA's bookkeeping software, which he had submitted to the bank. L. Creeger then instructed B. Hutchinson to amend seven other earlier tax returns. In early March 2021, L. Creeger instructed B. Hutchinson to represent to SAM.gov (the federal government portal for SVOG applications) that she was an employee of EMUSA. She refused to do so and reminded L. Creeger that he had refused to treat

B. Hutchinson and M. Hutchinson as employees when they had requested it. L. Creeger did not agree to reclassify B. Hutchinson and M. Hutchinson as employees and afford them appropriate withholding and benefits, in order to make the proposed representation truthful.

41.     L. Creeger instructed B. Hutchinson to make false statements in the application for SVOG funds. L. Creeger prepared several forms as part of the application and instructed B. Hutchinson to sign them. In addition, L. Creeger instructed her to provide incorrect revenue and proposed budget statements, and to state falsely that EMUSA was a drug-free workplace, all under penalty of perjury. A false statement or misrepresentation to the Small Business Administration may result in criminal or civil sanctions under 15 U.S.C. § 645, 18 U.S.C. § 1001, 18 U.S.C. § 1014, 18 U.S.C. § 1040, 18 U.S.C. § 3571, 31 U.S.C. § 3729, and 31 U.S.C. § 3802, among other federal statutes and regulations.

42.     Plaintiffs B. Hutchinson and M. Hutchinson both told L. Creeger that completing the SVOG application and its supporting forms as he had instructed would violate federal law and subject them to potential criminal or civil liability. B. Hutchinson refused to follow L. Creeger's orders that she provide false information to the Small Business Administration as part of the SVOG application.

*Defendants Retaliated Against Plaintiffs B. and M. Hutchinson*

43.     After B. Hutchinson and M. Hutchinson complained that L. Creeger's proposed course with regard to the SVOG funds would violate federal law, and after B. Hutchinson refused to follow L. Creeger's orders regarding the SVOG application, EMUSA and L. Creeger began to retaliate against B. Hutchinson and M. Hutchinson.

44.     Beginning in April 2021, L. Creeger took away most of the Hutchinson Plaintiffs' job responsibilities and authority.

45. On or about April 20, 2021, EMUSA abruptly reduced M. Hutchinson and B. Hutchinson's monthly wages by approximately $5,000 each. When asked, L. Creeger explained the reduction by saying that he was trying to reconcile reimbursements and credit card expenses since 2020. L. Creeger stated, "Your [*sic*] obviously going to make more but this needs to be fixed." Because of L. Creeger's assurances, M. Hutchinson and B. Hutchinson continued to work through May 2021.

46. By the end of May 2021, EMUSA had failed to pay B. Hutchinson $22,856.85 in earned wages, excluding unpaid overtime, and had failed to pay M. Hutchinson $18,360.26 in earned waged, excluding unpaid overtime. M. Hutchinson, speaking for herself and B. Hutchinson, demanded that EMUSA pay at least $8,000 towards its indebtedness and EMUSA agreed to do so.

47. On or about June 5, 2021, M. Hutchinson, speaking for herself and B. Hutchinson, asked M. Creeger and L. Creeger for a meeting to discuss the unpaid wages. Neither Creeger responded immediately but ultimately agreed to meet on June 10, 2021.

48. At the June 10, 2021, meeting, L. Creeger would not commit to paying the Hutchinson Plaintiffs the wages that EMUSA had previously agreed to pay and that B. Hutchinson and M. Hutchinson had earned. M. and B. Hutchinson asked that L. Creeger reconcile all accounts and pay the Plaintiffs what they were owed by June 14, 2021.

49. On June 14, 2021, B. Hutchinson again inquired to L. Creeger about the unpaid wages. L. Creeger responded that he was too busy to discuss the matter. The Hutchinson Plaintiffs ceased doing any further work for EMUSA on June 14, 2021.

50. As of June 14, 2021, EMUSA owed B. Hutchinson $28,553.16 in unpaid wages, excluding unpaid overtime.

51. As of June 14, 2021, EMUSA owed M. Hutchinson $23,510.26 in unpaid wages, excluding unpaid overtime.

52. After B. Hutchinson and M. Hutchinson ceased performing further work for EMUSA, L. Creeger began making false and defamatory statements that he had terminated them for theft or embezzlement.

53. As a result of Defendants' unlawful retaliation against Plaintiffs B. and M. Hutchinson, they have suffered damages including unpaid wages for the months of October 2020 through June 2021 and lost wages since June 14, 2021.

## COUNT I
**Violations of the Federal Fair Labor Standards Act ("FLSA")**
**Unpaid Overtime Premiums**

54. Plaintiffs hereby incorporate as though fully alleged herein the allegations set forth in the foregoing paragraphs.

55. Plaintiffs were "employees" and Defendants jointly were Plaintiffs' "employer" as those terms are defined by 29 U.S.C. § 203.

56. In particular, Plaintiffs were "employees" of Defendants because Plaintiffs' employment was permanent; Plaintiffs were economically dependent upon Defendants; Defendants maintained control over the time, place and manner in which Plaintiffs performed their jobs; Plaintiffs had little to no opportunity to experience profit or loss based on their own managerial skills; Plaintiffs' work was an integral part of Defendants' operations, which could not have continued without them; and Defendants generally provided Plaintiffs with all of the equipment necessary to perform their jobs.

57. At all times relevant hereto, Plaintiffs were non-exempt from the overtime pay requirements of the FLSA; thus, Plaintiffs were entitled to receive an overtime premium under the FLSA for all time they worked beyond forty (40) hours in a workweek.

58. The FLSA requires employers to pay non-exempt employees an overtime premium of one and one-half times their regular hourly rate of pay for hours worked in excess of 40 hours in any work week.

59. During the concert seasons of 2019, 2020 and 2021, Plaintiffs regularly worked more than 40 hours in weeks during which they provided support for one or more of Defendants' concerts or events, but they were not paid an overtime premium for those overtime hours they worked. During 2019, B. Hutchinson worked 755 hours of uncompensated overtime; M. Hutchinson worked 310.5 hours of uncompensated overtime; and Tate worked 387.75 hours of overtime that were not compensated at the overtime premium rate. During 2020, B. Hutchinson worked 277 hours of uncompensated overtime and M. Hutchinson worked 21 hours of uncompensated overtime. During 2021, B. Hutchinson worked 384 hours of uncompensated overtime; M. Hutchinson worked 105 hours of uncompensated overtime; and Tate worked 45 hours of overtime that were not compensated at the overtime premium rate.

60. Defendants violated the FLSA by knowingly failing to pay Plaintiffs one and one-half times their regular rate of pay for the hours they worked in excess of 40 hours in any work week.

61. Defendants' violations of the FLSA were repeated, knowing, willful and intentional.

62. Accordingly, Defendants are liable to Plaintiffs under the FLSA, 29 U.S.C. § 216(b) for all unpaid overtime wages, plus an equal amount in liquidated damages, reasonable attorneys' fees, litigation expenses, costs and any other further relief that this Court deems appropriate.

## COUNT II
### Violation of Virginia Code § 40.1-27.3
### Unlawful Retaliation against Plaintiffs B. Hutchinson and M. Hutchinson

63. Plaintiffs hereby incorporate as though fully alleged herein the allegations set forth in the foregoing paragraphs.

64. Plaintiff B. Hutchinson and Plaintiff M. Hutchinson engaged in a statutorily protected activity each time they complained to their supervisors, Defendant L. Creeger or Defendant M. Creeger, that false statements to the federal government in Defendant EMUSA's SVOG application violated federal laws and regulations.

65. Plaintiff B. Hutchinson engaged in a statutorily protected activity each time she refused Defendant L. Creeger's orders to perform an action that would have violated federal or state law or regulation and, in so doing, informed Defendant L. Creeger that she was refusing the order for that reason.

66. In retaliation both for Plaintiff B. Hutchinson's and Plaintiff M. Hutchinson's complaints that Defendants were asking them to engage in unlawful activity and for B. Hutchinson's refusal to follow orders that would have resulted in violations of federal and/or state law or regulation, Defendants EMUSA, L. Creeger, and M. Creeger subjected the Hutchinson Plaintiffs to derogatory and defamatory statements, stripped them of certain job responsibilities, reduced their pay, and refused to pay their earned wages.

67. Defendants had no legitimate business reasons for engaging in the aforementioned acts of retaliation. Each said act of retaliation violates Virginia Code § 40.1-27.3.

68. As a direct and proximate result of Defendants' intentional retaliation against Plaintiff B. Hutchinson and Plaintiff M. Hutchinson, they suffered a loss of earnings and other employment benefits and remuneration, in an amount to be proved at trial. They are therefore entitled to reinstatement to the positions they held before the Defendants' retaliatory actions, or equivalent positions, compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorneys' fees and costs, as provided by Va. Code § 47.1-27.3(C).

## COUNT III
### Violation of Virginia Code § 40.1-29
### Theft of Wages from Plaintiffs B. Hutchinson and M. Hutchinson

69. Plaintiffs hereby incorporate as though fully alleged herein the allegations set forth in the foregoing paragraphs.

70. Defendants employed Plaintiffs B. Hutchinson and M. Hutchinson as employees from 2013 through June 14, 2021.

71. Beginning in October 2020, although the Hutchinson Plaintiffs continued to provide services, Defendants stopped paying them their full wages and directed them to use their business credit cards in lieu of wages to cover their living expenses. On or about March 31, 2021, Defendants failed to pay Plaintiffs B. and M. Hutchinson for the work they had performed during that month. Defendants' failure to pay the Hutchinson Plaintiffs continued during the months of April, May, and June 2021, at which time they resigned.

72. Plaintiffs B. and M. Hutchinson were suffered to perform work for Defendants from October 2020 through June 14, 2021, but Defendants failed to pay them for all of that work.


73. For the time period April to June 14, 2021, Defendants knew they were obligated to pay Plaintiffs' wages, but they willfully failed or refused to pay the Hutchinson Plaintiffs their earned wages with the intent to defraud them in violation of Virginia Code § 40.1-29.

74. As a result of Defendants' refusal to pay the Hutchinson Plaintiffs their earned wages, Defendants are liable to Plaintiffs B. and M. Hutchinson for the payment of all unpaid wages they are due, plus an amount equal to two times the unpaid wage amount, as liquidated damages, plus interest at an annual rate of eight percent accruing from the date the wages were due and reasonable attorneys' fees and costs, as provided in Virginia Code § 40.1-29 (J) and (K).

### COUNT IV
### Violation of Virginia Code § 40.1-28.7:7
### Misclassification of Plaintiffs

75. Plaintiffs hereby incorporate as though fully alleged herein the allegations set forth in the foregoing paragraphs.

76. Plaintiffs Tate, B. Hutchinson, and M. Hutchinson each performed services for the Defendants for remuneration, and each is presumed to have been an employee of Defendants EMUSA, L. Creeger, and M. Creeger.

77. Defendants knew that Plaintiffs were improperly misclassified.

78. As a result of Defendants' knowing and intentional misclassification of Plaintiffs as independent contractors, Plaintiffs are entitled to recover from Defendant any wages, salary, employment benefits, including expenses incurred by them that would otherwise have been covered by insurance, or other compensation lost to the individual, a reasonable attorney fee and the costs incurred by them in bringing this action.

### PRAYER FOR RELIEF

Based on the foregoing, Plaintiffs demand judgment against Defendants in an amount that will compensate them for Defendants' violations of their rights as follows:

A.  For Defendants' violations of the FLSA, an award to each Plaintiff for unpaid wages at her overtime premium rate for hours worked over 40 in any work week, plus an equal amount in liquidated damages and reasonable attorneys' fees and costs; and

B.  For Defendants' violations of Virginia Code § 40.1-27.3, an award to Plaintiffs B. Hutchinson and M. Hutchinson for lost wages, benefits, and other remuneration, plus interest thereon as well as reasonable attorneys' fees and costs, as provided by Virginia Code § 47.1-27.3(C); and

C.  For Defendants' violations of Virginia Code 40.1-27.3, an Order directing the Defendants to reinstate B. Hutchinson and M. Hutchinson in the positions they held before the Defendants' retaliatory actions, or, if the Court finds reinstatement impractical, an award of front pay sufficient to make B. Hutchinson and M. Hutchinson whole; and

D.  For Defendants' violations of Virginia Code § 40.1-29, an award to Plaintiffs B. Hutchinson and M. Hutchinson for the payment of all unpaid wages owed, plus an amount equal to two times the amount of unpaid wages, as liquidated damages, interest at an annual rate of eight percent and reasonable attorneys' fees and costs, as provided by Virginia Code § 40.1-29 (J); and

E.  For Defendants' violations of Virginia Code § 40.1-28.7:7, an award to Plaintiffs of wages, salary, employment benefits, including expenses incurred by them that would otherwise have been covered by insurance, or other compensation lost to them, a reasonable attorney fee, and the costs incurred by them in bringing this action, as provided by Virginia Code § 40.1-28.7:7 (A); and

F.  With respect to Coutns II and IV, an award of punitive damages against each Defendant; and

F.  Pre-judgment and post-judgment interest; and

18

G. Any and all other relief to which they may be entitled.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for any and all issues proper to be so tried.

        Respectfully Submitted,
        TRINA TATE,
        BRITTANY HUTCHINSON and
        MORGAN HUTCHINSON,

        By Counsel


        */s/ Nichole Buck Vanderslice*
        Nichole Buck Vanderslice (VSB #42637)
        LAW OFFICE OF NICHOLE B. VANDERSLICE, PLLC
        9019 Forest Hill Avenue, Suite 2C
        Richmond, VA 23235
        Tel: (804) 272-2920
        *nvanderslice@nbvlaw.com*


        */s/ Blackwell N. Shelley, Jr.*
        Blackwell N. Shelley, Jr. (VSB No. 28142)
        SHELLEY CUPP SCHULTE, P.C.
        2020 Monument Avenue, First Floor
        Richmond, Virginia 23220
        Tel: (804) 644-9700
        *shelley@scs.law*
        *Counsel for Plaintiffs*